UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DENNIS LEE BYRGE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:10-CV-129 (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION**

This case is before the Court for disposition of plaintiff's Memorandum in Support of Appeal [Doc. 6] and defendant's Motion for Summary Judgment [Doc. 10]. Plaintiff, Dennis Lee Byrge, seeks judicial review of the decision of the Administrative Law Judge (the "ALJ"), which is the final decision of defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On April 10, 2006, plaintiff filed a claim for disability insurance benefits ("DIB"), alleging a period of disability beginning on November 14, 2005 [Tr., p. 109]. After his application was denied initially and denied upon reconsideration, plaintiff requested a hearing. On July 16, 2008, a hearing was held before the ALJ to review the determination of plaintiff's claim [*Id.*, pp. 22-52]. On September 2, 2008, the ALJ found that plaintiff was not disabled [*Id.*, pp. 11-19]. On January 8, 2010, the Appeals Council denied plaintiff's request for review and thus, the decision of the ALJ became the final decision of the

Commissioner [*Id.*, pp. 1-3]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**I.     The ALJ's Findings**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since November 14, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*)

3. The claimant has the following severe impairments: lumbar degenerative disc disease; obesity; and bilateral carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must have the option to alternate sitting and/or standing at 30 minute intervals. In addition, he experiences numbness of his hands listing up to ten minutes a time, which occurs occasionally, not every hour, two to three times a day, which impairs his ability to perform rapid fine dexterity or fingering during these episodes, but he can still use his hands for grasping.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 10, 1957 and was 48 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2005 through the date of this decision (20 CFR 404.1520(g)).

[Tr., pp. 11-19].

## II. Disability Eligibility

An individual is eligible for supplemental security income ("SSI") if he has financial need and he is aged, blind, or under a disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he

lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. *Id.* The burden of proof shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v.*

*Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III.     Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. *Longworth v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Serv.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y of Health & Human Serv.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

**IV. Analysis**

On appeal, plaintiff argues that substantial evidence does not support the ALJ's disability determination. Specifically, plaintiff asserts that (1) the ALJ's determination to afford plaintiff's treating physician no weight was not supported by substantial evidence; (2) the ALJ violated 20 C.F.R. § 404.1529 by failing to consider the significant side effects of plaintiff's medications; and (3) the ALJ erred by classifying plaintiff's depression as "nonsevere." [Doc. 6, pp. 6-9]. The Court will address each argument in turn.

> **A. Rejection of the Opinion of Plaintiff's Treating Physician, D. Bruce Coffey, M.D.**

Plaintiff argues that the ALJ committed error by rejecting the opinion of his treating physician, Dr. Coffey [Doc. 6, p. 6]. Specifically, plaintiff asserts that Dr. Coffey, as his longtime treating physician, was in the best position to render an opinion regarding the impact of plaintiff's back impairment on his ability to work [*Id.*, p. 7]. The Commissioner responds that the ALJ "properly served his role of weighing the medical opinions with the other evidence in the record." [Doc. 11, p. 18].

When determining a claimant's physical residual functional capacity, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation,

and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1502)).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (concluding that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order for an ALJ to determine the proper weight to afford a treating source's non-controlling opinion, consideration is given to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, Dr. Coffey wrote a October 17, 2006 letter entitled "To Whom it May Concern," in which he stated that plaintiff was "permanently disabled and unable to work at this point." [Tr., p. 489]. Dr. Coffey noted that plaintiff has "severe pain in his lumbar spine with decreased range of motion." [*Id.*]. Dr. Coffey also stated that plaintiff suffered from "degenerative disc disease with prolapse, multiple levels of degenerative joint disease." [*Id.*]. Dr. Coffey also noted that plaintiff is "in end stage chronic obstructive pulmonary disease." [*Id.*].

Dr. Coffey completed an evaluation of plaintiff's condition in December 2006. In that evaluation, Dr. Coffey opined that plaintiff suffered from the following impairments: severe degenerative disc disease and degenerative arthritis of the cervical, thoracic, and lumbar spine [Tr., p. 484]. Dr. Coffey also noted that plaintiff had persistent weakness and back pain and stated that plaintiff's "prognosis was poor." [*Id.*]. Due to these conditions, Dr. Coffey opined that plaintiff was unable to lift on an occasional basis, unable to lift on a frequent basis, bend, or stoop [*Id.*, pp. 486-87]. Dr. Coffey asserted that plaintiff could only sit for two hours out of an eight-hour day and stand and walk for one hour out of an eight-hour day [*Id.*, p. 481]. Notably, while Dr. Coffey opined that plaintiff could only stand or sit for fifteen minutes at a time, on another form completed the same day, Dr. Coffey indicated that plaintiff could stand or sit for thirty minutes at a time [*Id.*, pp. 485, 487]. Dr. Coffey also

indicated that plaintiff was moderately limited in his ability to deal with moving machinery, unprotected heights, driving motor vehicles, changes in temperature and humidity, and exposure to dust fumes and gases [*Id.*, pp. 482-83].

The ALJ stated that he was rejecting Dr. Coffey's opinion "as it is inconsistent with the overall evidence of record, including the claimant's own testimony as to some of his activities, which include feeding horses, doing laundry and other household chores, and mowing his yard." [Tr., p. 17]. The ALJ also noted that "[t]hese activities would require the claimant to do some lifting and bending and/or squatting." [*Id.*]. Further, the ALJ stated that "[t]here is no objective evidence that the claimant has undergone any pulmonary function tests; that he has been referred for treatment by a pulmonary specialist; or that he has even been prescribed medications on any consistent basis for respiratory problems." [*Id.*]. The ALJ also discounted Dr. Coffey's letter stating that plaintiff was permanently disabled because a "conclusory statement of disability necessarily requires a vocational analysis that is reserved to the Commissioner." [*Id.*].

The ALJ properly considered and provided reasons for rejecting Dr. Coffey's opinion. The ALJ stated that Dr. Coffey's opinion is inconsistent with the overall evidence of record. *See* 20 C.F.R. § 404.1527(d)(2). While Dr. Coffey opined that plaintiff's degenerative disc disease and pain rendered him permanently disabled, the ALJ noted that plaintiff's treatment for back pain "has been conservative, with medication, physical therapy, and lumbar spine epidural injections[,]" and that surgery was not recommended [Tr., p. 16]. The ALJ stated that while plaintiff suffers from degenerative disc disease, there is no evidence of lateral

9

extension, no herniated discs, no spinal stenosis, no neuroforminal narrowing, no nerve root impingement, and plaintiff did not require the assistance of a walking device [*Id.*]. Additionally, images of plaintiff's spine failed to indicate significant abnormalities. For example, an October 2006 x-ray revealed that there was "mild spurring" over the lumbar spine "with no specific abnormalities identified." [*Id.*, p. 468]. Additionally, a December 2006 lumbar x-ray indicated only "possible mild disc narrowing at L4-5 and L5-S1" and "some mild osteophyte formation" in the lower lumbar spine [*Id.*, p. 467].

In addition, the physical evaluation of plaintiff's examining physician, Jeffrey Uzzle, M.D., was inconsistent with Dr. Coffey's assessment. Dr. Uzzle examined plaintiff in July 2006 and observed that his gait and station were normal and that he could toe and heel walk normally [Tr., p. 355]. Plaintiff's sensory examination was also normal and negative straight leg raising bilaterally, normal muscle, and reflex testing. Dr. Uzzle also noted that plaintiff had full range of motion of hips: 70 degrees lumbar flexion and 20 degrees lumbar extension [*Id.*]. Dr. Uzzle's conclusion was that despite plaintiff's complaints, there was a lack of musculoskeletal or neurological findings and a lack of anatomical findings on studies to support the complaints [*Id.*, p. 356].

Moreover, the ALJ noted that while Dr. Coffey diagnosed chronic obstructive pulmonary disease, "[t]here is no objective evidence that the claimant has undergone any pulmonary function tests; that he has been referred for treatment by a pulmonary specialist; or that he has even been prescribed medications on any consistent basis for respiratory problems." [Tr., p. 17]. This statement is supported by substantial evidence. Dr. Coffey's

own treatment notes undermine any suggestion that plaintiff's chronic pulmonary disease is permanently disabling. For example, on August 28, 2006, approximately a month and a half before Dr. Coffey opined that plaintiff suffered from chronic obstructive pulmonary disease, Dr. Coffey stated that plaintiff's "[b]reath sounds are good and lungs are clear bilaterally." [*Id.*, p. 437]. On September 25, 2006, Dr. Coffey indicated that plaintiff's "[b]reath sounds are good." [*Id.*, p. 435]. Similarly, on November 6, 2006, after opining that plaintiff was permanently disabled, Dr. Coffey stated that plaintiff's lungs were clear and he did not assess plaintiff with pulmonary disease [*Id.*, 425-35]. In addition, there is no evidence in the record that plaintiff was treated by a pulmonary specialist or underwent pulmonary function tests.

The ALJ also identified that plaintiff's activities of daily living were inconsistent with Dr. Coffey's opinion. While Dr. Coffey opined that plaintiff was unable to bend, stoop, squat, climb, reach, pull, or lift, plaintiff's testimony regarding his daily activities undermines Dr. Coffey's assessment. For example, plaintiff testified that he did his own and his wife's laundry and mowed his lawn [Tr., p. 34]. Plaintiff also testified that he fed his horses and cats in the mornings [*Id.*, p. 32]. It is reasonable that such activities would require some degree of lifting, bending, reaching, and usually, stooping and squatting, and therefore, such activities are inconsistent with Dr. Coffey's opinion.

Accordingly, the Court finds that the ALJ's decision to discount the opinion of plaintiff's treating physician, Dr. Coffey, is supported by substantial evidence.[1]

## B. Consideration of the Side Effects of Plaintiff's Medications

Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1529 by failing to consider the significant side effects from his medications [Doc. 6, p. 8]. The Commissioner responds that the ALJ properly considered any alleged side-effects of plaintiff's medications [Doc. 11, p. 18].

The "type, dosage, effectiveness, and side effects" of a claimant's medications is a relevant factor an ALJ will consider when assessing subjective complaints of pain. 20 C.F.R. § 404.1529(c)(3)(iv). An ALJ is advised to "consider" a claimant's medication side effects. SSR 96-7p. An ALJ is not required to find that a claimant's alleged medication side effects impact his functioning if those side effects are not part of the record. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004).

In this case, the ALJ discussed plaintiff's medications and alleged side effects. The ALJ stated that plaintiff "takes prescribed muscle relaxers and pain medication for his pain."

---

[1] Plaintiff mentions, but does not directly challenge, that the ALJ afforded no weight to the opinions of Dr. Uzzle and Mona K. Mishu, M.D. The ALJ noted that Dr. Uzzle found "no physical functional limitations whatsoever" and that Dr. Mishu "opined that the claimant could perform medium work."[Tr., p. 16]. Here, the ALJ is discounting the physicians' residual functional capacity assessments, not their entire medical evaluation. A residual functional capacity determination is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). In this case, the ALJ determined that plaintiff's residual functional capacity was not as limited as that opined by Dr. Coffey, yet not as "optimistic" as the residual functional capacity assessments of Dr. Uzzle and Dr. Mishu. The ALJ's decision reflects that he considered all the medical evidence and made a residual functional capacity assessment based on such evidence. As the determination of residual functional capacity is reserved for the Commissioner, the decision is left up to the ALJ.

12

[Tr., p. 15]. The ALJ also indicated that plaintiff testified that these medications "knocked him out" and that he would then "nap for one to two hours." [*Id.*]. The ALJ asserted, however, that "there is no indication that [plaintiff] reported such [side effects] to his treating physician." [*Id.*, p. 18].

Substantial evidence supports the ALJ's statements regarding plaintiff's medications. For example, in May 2006, Dr. Coffey noted that plaintiff asked for refills to his medications, but there is no indication in the treatment note that plaintiff reported adverse side effects from his prescribed medication. Additionally, in November 2007, plaintiff asked Dr. Coffey for refills of his medications, but failed to complain of any adverse side effects caused by the medications [Tr., p. 451]. Thus, plaintiff's current claims are belied by the medical records. Therefore, since plaintiff failed to complain to his treating physician of the side effects of the medication, such as drowsiness, the ALJ did not err in finding that any side effects from plaintiff's medication do not impact his ability to work. *See Essary*, 114 F. App'x at 665 (concluding that the ALJ did not commit error when the plaintiff testified that she suffered side effects of her medication but the medical records failed to indicate that the plaintiff reported such side effects to her physicians).

Accordingly, the Court finds that the ALJ properly considered and addressed plaintiff's alleged side effects from her medication.

## C. The ALJ's Classification of Plaintiff's Mental Impairment as Not Severe

Plaintiff argues that the ALJ erred by classifying her mental impairment as "nonsevere." [Doc. 6, p. 9]. Specifically, plaintiff contends that the ALJ failed to consider a reported Global Assessment Functioning ("GAF") score of 55 when determining that her mental impairment was not severe [*Id.*]. The Commissioner responds that substantial evidence supports the ALJ's decision that plaintiff's mental impairments were not severe [Doc. 11, p. 9]. The Commissioner points out that a non-acceptable medical source assessed plaintiff's GAF, and a GAF score does not have a "direct correlation to disability." [*Id.*, pp. 10-11].

A "special technique" is used to evaluate the severity of mental impairments. 20 C.F.R. § 404.1520a(a); *see* 20 C.F.R., Part 404, Subpart B, App'x I. An ALJ evaluates a claimant's functioning in three areas: activities of daily living; social functioning; and concentration, persistence, and pace. *Id.* The ALJ must then determine whether the claimant has experienced episodes of decompensation. *Id.*

In this case, the ALJ found that plaintiff's mood disorder with depressive features was not severe. The ALJ noted that plaintiff had only mild limitation in activities of daily living because he was able to drive, read, watch television, do laundry, mow his lawn, keep his house in order, and feed three horses and some cats [*Id.*, pp. 13-14]. In addition, the ALJ found that plaintiff had only a mild impairment in social functioning, as he was able to function appropriately at the hearing and at physicians' offices [*Id.*, p. 14]. The ALJ also found that plaintiff had only mild limitations in concentration, persistence, and pace, because

14

he was able to understand and follow lines of questioning at the hearing [*Id.*]. Additionally, plaintiff enjoyed reading, driving, and watching television, and in the January 2007 evaluation, he concentrated adequately demonstrating average intellectual functioning [*Id.*]. Finally, the ALJ found no evidence that plaintiff experienced any episodes of decompensation [*Id.*].

Plaintiff does not challenge any of the ALJ's four findings. The only argument raised by plaintiff is that the ALJ failed to consider a GAF score of 55. Plaintiff contends that his GAF score of 55 revealed "moderate symptoms OR moderate difficulty in social, occupational, or school functioning," and thus, the ALJ erred when concluding that he suffers only "mild" limitation from his mental impairment [Doc. 6, p. 9].

A GAF score of 55 "indicates moderate symptoms or moderate difficulty in social or occupational functioning, rather than the more serious symptoms or difficulty in functioning suggested by a score in the 40s." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citing DSM-IV-TR at 34). The U.S. Sixth Circuit Court of Appeals, however, has held that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.* (internal citations omitted). Moreover, the Commissioner "has declined to endorse the [GAF] score for use in Social Security and SSI disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 417 (6th Cir. 2006). The ALJ failure to discuss plaintiff's GAF score, therefore, did not result in error as a GAF score.

Moreover, it is not uncommon for a plaintiff to challenge an ALJ's determination that a physical or mental condition is not severe. The Sixth Circuit had held that it is unnecessary to decide the question of an ALJ's determination of "severity" because once the ALJ finds one impairment "severe," he "must continue with the remaining steps in his disability evaluation." *Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Therefore, the ALJ "properly could consider" whether a non-severe condition impacted a claimant's residual functional capacity and the ALJ's failure to find a claimant's condition "constituted a severe impairment could not constitute reversible error." *Id.* In this case, the ALJ continued with the sequential evaluation and plaintiff has failed to demonstrate that he was harmed by the ALJ's determination that his mental impairment was not "severe." *See Jackson v. Astrue*, No. 4:10CV-0060-EHJ, 2010 WL 5290503, at *5 (W.D. Ky. Oct. 22, 2010) (noting that the plaintiff "failed to demonstrate how she has been harmed by the failure to find her mental impairment is 'severe' within the meaning of the regulations"). Additionally, plaintiff does not argue that "but for this error" he would have been found disabled at the third, fourth, and fifth steps of the sequential evaluation process. *Id.*

Accordingly, the Court finds that no error resulted when the ALJ determined that plaintiff's mental impairments were not severe.

## V.     Conclusion

For the reasons stated above, the Court concludes that the ALJ properly reviewed and weighed the evidence to determine that plaintiff was not disabled through March 31, 2006, the date last insured.  Substantial evidence supports the ALJ's findings and conclusions.  Accordingly, plaintiff's Memorandum in Support of Appeal [Doc. 6] will be **DENIED**, and defendant Commissioner's Motion for Summary Judgment [Doc. 10] will be **GRANTED**.  An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE